**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Thomas WHANGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 18, 2011.
Filed Oct. 20, 2011.

---

Suzanne M. Swan, Chief Public Defender and Carrie L. Allman, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Margaret Ivory, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, LAZARUS and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

This case is an appeal from the order designating Appellant a sexually violent predator ("SVP") under 42 Pa.C.S.A. § 9795.4. He contends that, because the aforesaid statute requires SVP assessments to be conducted before sentencing,

---

* Retired Senior Judge assigned to the Superior Court.

the court in this case erred by having his assessment done after he was sentenced. He also contends the evidence was insufficient to support the SVP designation. We affirm the order.

After pleading guilty to various sex offenses, Appellant proceeded to sentencing in May 2009. Before he was sentenced, however, he executed a form in which he acknowledged understanding the law requires that SVP assessments take place before sentencing. In that same form, Appellant waived that requirement. Appellant was then sentenced.

In addition to the fact that Appellant affirmatively waived the requirement that the SVP assessment be conducted before sentencing, he filed no post-sentence motion complaining that he was sentenced before his SVP assessment. He also filed no appeal at that time.

Appellant was later assessed by the Sexual Offenders Assessment Board ("SOAB"). In February 2010, the court held an SVP hearing. During the SVP hearing, Appellant lodged no objection to the assessment being held after sentencing. At the conclusion of the hearing, the court imposed the SVP designation. After the SVP hearing, Appellant did not file any motion complaining that the SVP process had occurred after he was sentenced. Appellant then filed this appeal. The Commonwealth claims Appellant waived any complaint about the sequence of his sentencing and SVP assessment.

 Appellant's first point is that the statutory language of 42 Pa.C.S.A. § 9795.4(a) indicates the SVP assessment is to be conducted after conviction but before sentencing. This assertion is true enough, but the fact that a statute, like the SVP statute, requires things to be done in a certain way or a certain order does not mean that the requirement cannot be waived. There is always a rule, statute, constitutional right, or other legal require-

ment at issue when a party claims waiver. Indeed, if there were no rules, statutes, constitutional rights, or other legal requirements, there would never be a question of whether those requirements were waived. Thus, the fact that the statute sets forth a sequence of events does not mean that Appellant could not have waived the required sequence.

Indeed, the law is quite plain that any number of statutory or other rights and requirements may be waived. *Commonwealth v. Mallory*, 596 Pa. 172, 941 A.2d 686, 697 (2008); *Commonwealth v. Byrne*, 833 A.2d 729, 734–35 (Pa.Super.2003). In this case, it is clear that Appellant waived his claim that the statutory language of 42 Pa.C.S.A. § 9795.4(a) prohibited the sequence in which his sentencing and SVP process took place. Having waived his claim, he is not now entitled to relief. Pa.R.A.P. 302(a).

We note Appellant relies on *Commonwealth v. Baird*, 856 A.2d 114 (Pa.Super.2004). We agree that, in *Baird*, this Court did hold that the SVP statute requires an assessment before sentencing. *Id.* at 118. However, this holding was merely a statement of what the statute requires. The holding had nothing whatsoever to do with waiver because waiver was not an issue in *Baird*. Moreover, the appellant in that case (the Commonwealth) **did** preserve its claim by objecting at sentencing to the trial court's decision to sentence the defendant before the SVP assessment and determination. *Id.* at 115. In the present case, Appellant made no such objection.

 Appellant also argues the trial court had no jurisdiction to modify its May 2009 sentencing order by classifying him as an SVP in February 2010. On this point, he cites 42 Pa.C.S.A. § 5505, the statute allowing a court to modify or rescind an order within thirty days of its

entry as long as no appeal has been taken. He contends the court lost jurisdiction to alter or modify its sentence by entering the SVP order because more than thirty days had passed after he was sentenced.

■ Appellant's reliance on Section 5505 is misplaced. An SVP determination is a collateral consequence of a conviction and is not a sentence. *Commonwealth v. Leidig*, 598 Pa. 211, 956 A.2d 399, 404–05 (2008). That being the case, the SVP order could not possibly be a modification or rescission of the sentencing order. The sentencing order was one thing; the SVP order was another. Because the SVP order did not modify the sentence, Section 5505—which limits a court's ability to modify its orders—is not applicable.

■ Appellant next claims the evidence was insufficient to support the SVP determination. This claim, too, fails. Our standard for reviewing a sufficiency challenge to an SVP determination is the following:

> We do not weigh the evidence presented to the sentencing court and do not make credibility determinations. Instead, we view all the evidence and its reasonable inferences in a light most favorable to the Commonwealth. We will disturb an SVP designation only if the Commonwealth did not present clear and convincing evidence to enable the court to find each element required by the SVP statutes.

*Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa.Super.2008).

Having reviewed the record and the trial court's opinion in light of the foregoing standard, we find the evidence was sufficient to support the SVP designation. In doing so, we adopt the following portions of the trial court's opinion:

> ... Megan's Law II provides that the trial court shall "determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n] [SVP]." *Commonwealth v. Askew*, 907 A.2d 624 (Pa.Super.2006) (internal citation omitted). Furthermore,

> > The determination of a[n] [individual]'s SVP status may only be made following an assessment by the [SOAB] and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court must be able to conclude that the factfinder found clear and convincing evidence that the individual is a[n] [SVP].

> *Commonwealth v. Krouse*, 799 A.2d 835 (Pa.Super.2002) (*en banc*), appeal denied, [573 Pa. 671] 821 A.2d 586 (2003). The Superior Court further stated that it would reverse a trial court's determination of SVP status only if the Commonwealth did not present clear and convincing evidence sufficient to enable the trial court to determine that each element of the statute had been satisfied. *Id.*

> To deem and individual a[n] SVP, the Commonwealth must first show that he has been convicted of a sexually violent offense as set forth in 42 Pa.C.S.A. § 9795.1. *Askew*, 907 A.2d 624 (Pa.Super.2006). Secondly, the Commonwealth must show that the individual has a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses. *Id.* In Accordance with Megan's Law, the following factors should be considered:

> > (1) Facts of the current offense, including:

> > > (i) Whether the offense involved multiple victims.

> > > (ii) Whether the individual exceeded the means necessary to achieve the offense.

> > > (iii) The nature of the sexual contact with the victim.

> > > (iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

[Appellant]'s first contention ... is that the determination that [he] had a mental abnormality was unfounded. Under Megan's Law "mental abnormality" is defined as:

[C]ongenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

■ Pa.C.S.A. § 9792. [Appellant] claims that [testimony from the Commonwealth's expert, Dr. Pass,] regarding the [Appellant]'s diagnosis of pedophilia was inadequate because the doctor did not explain the "ample evidence" used to make the determination. (SVP Hearing, p. 11). However, in his Sexual Offender Assessment dated June 27, 2099, (hereinafter "S.O.A."), p. 3, Dr. Pass explained the factors necessary to meet the classification for pedophilia.

This diagnostic classification [pedophilia] requires a behavioral manifestation over the course of at least 6 months of sexualized conduct, fantasies or urges with a pre-pubescent child or children. The behaviors, fantasies or urges cause clinically significant distress or impairment in important areas of functioning. Lastly, this disorder requires that the [individual] must be at least 16 years of age and at least 5 years older than the child or children who have been victimized by the behavior.

(S.O.A., p. 3). He further wrote, "in this regard, it is noted that Appellant engaged in illegal sexual conduct with his adopted daughter beginning at the age when she was 9 years old, progressing forward for approximately 4 years and 4 months." (S.O.A., p. 3). Dr. Pass testified that pedophilia is a sexual identity and sexual behavior disorder, which falls into the classification of mental abnormality. (SVP Hearing, p. 11).

Based upon the S.O.A. completed by Dr. Pass, he correctly concluded that ... [Appellant] is classified as a pedophile, which is a mental abnormality. This claim lacks merit because Dr. Pass testified at the SVP Hearing that there was ample evidence to support pedophilia ... and that pedophilia falls into the classification of mental abnormality.

[Appellant]'s ... [position is also] that there was no evidence presented to indicate that the offenses involved displayed

unusual cruelty and also that there was no evidence presented that [Appellant] exceeded them means necessary to achieve the offense as evidenced by the lack of force, threats, or weapons. In the S.O.A., Dr. Pass wrote, "[T]here is no scientific assignment of weighted values determining that one or all of the Megan's Law assessment factors are more or less important. A[n] [individual] may meet the classification criteria for a sexually violent predator with one or all of the factors." (S.O.A., p. 2). According to [42] Pa.C.S.A. § 9795(4), an assessment shall include an examination of the list of factors described above. It is not necessary for the offense to display unusual cruelty, nor is it necessary to show that offender exceeded the means necessary to achieve the offense. [Appellant also asserts] that the designation of [him] as a violent predator was inappropriate because he had no prior criminal history and there was only one victim. It is not necessary for an offender to have a prior criminal history, or for the offense to include more than on victim. These factors are simply to be considered in the determination of an offender's sexually violent predator status.... *Askew*, 907 A.2d [at 629–30]. Thus, this claim lacks merit. Next, ... [Appellant] contends that the offenses against the victim were situational because he lived with the victim and served as a father figure. He argues that the offenses were opportunistic, not predatory. The Megan's Law statute defines predatory behavior as "an act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted in whole or in part in order to facilitate or support victimization" 42 Pa.C.S.A. § 9792. [Appellant] states that the relationship with his adopted daughter existed wholly independent of any sexual misconduct. [Appellant] also maintains that he was the victim's adopted father, and the relationship was not initiated for a sexual purpose. However, the statute does not require that a relationship be initiated for a sexual purpose.

[Appellant] engaged in illegal sexual conduct with his adopted daughter when she was age nine (9), and continued for approximately four (4) years and four (4) months. (S.O.A., p. 3). Dr. Pass testified that, although the relationship was probably not established just to exploit the victim, [Appellant] served in a role of adoptive father until he made a conscious decision to engage in deviant sexual conduct. (SVP Hearing, p. 9). The relationship became one of sexual exploitation, which continued for more than four years. This supports the factor that [Appellant] in fact looked at and utilized the relationship with his adoptive daughter in an exploitive manner. (SVP Hearing, p. 9). In his S.O.A., Dr. Pass addresses the issue of predatory behavior, concluding, "... [Appellant] did engage in acts directed at the victim with whom a relationship had been initiated, maintained, established, maintained or promoted in whole or in part in order to facilitate or support victimization." (S.O.A., p. 4).

Therefore, [Appellant]'s claim that the prolonged period of abuse was opportunistic, not predatory, is unfounded based on the expert findings of Dr. Pass' testimony and assessment with regards to ... [Appellant].

[Appellant]'s ... [position is also] that there was acceptance of responsibility through a guilty plea. In defense counsel's closing at the SVP Hearing, counsel stated, "[E]ven Dr. Pass agrees that people who plead guilty to or are convicted of committing crimes against their own children, sexual crimes that is, are less likely to reoffend." (SVP Hear-

ing, p. 16). However, this claim completely lacks merit because it was not established in either the SVP Hearing or Dr. Pass' S.O.A.

\* \* \* \* \* \*

Based upon the foregoing evidence, it is clear that the Commonwealth met its burden of proving that [Appellant] was a[n][SVP] by clear and convincing evidence.

Trial Court Opinion, 08/13/10, at 3–10 (internal footnotes omitted).

In light of our foregoing discussion, Appellant's claims lack merit and we affirm the judgment of sentence.

Order affirmed.

Judge BOWES joins the Majority Opinion and files a Concurring Opinion.

Judge LAZARUS files a Dissenting Opinion.

CONCURRING OPINION BY BOWES, J.:

I join in full with the majority's reasoned disposition of Appellant's claim regarding the timing of his sexually violent predator ("SVP") hearing and his waiver of the right to have that hearing before sentencing. I write separately to address the dissent's contention that the trial court was without jurisdiction in this matter.

I am cognizant that no published decision[1] has spoken on the issue of a trial court's jurisdiction or authority to conduct an SVP hearing nine months after sentencing. Neither *Commonwealth v. Baird,* 856 A.2d 114 (Pa.Super.2004), nor *Commonwealth v. Harris,* 972 A.2d 1196 (Pa.Super.2009), discusses jurisdiction nor does the Megan's Law statute utilize the word jurisdiction. While I agree with the dissent that a sentencing court may utilize a defendant's SVP status as an aggravating or mitigating factor in sentencing, *see Commonwealth v. Shugars,* 895 A.2d 1270 (Pa.Super.2006), the mere fact that a court can or should consider aggravating and mitigating factors such as a defendant's SVP status does not speak to the jurisdictional question.

Initially, I note that in *Harris, supra,* relied on by the dissent, the trial court sentenced the defendant on January 11, 2002, and on that same date, the Commonwealth requested the trial court to direct the defendant to undergo an assessment by the Sexual Offender's Assessment Board ("SOAB"). The trial court refused to order the assessment. Thus, two separate appeals occurred. The defendant appealed his judgment of sentence and the Commonwealth appealed the trial court's order refusing to order the SVP assessment. Obviously, sentencing in that matter was conducted before the SVP hearing. Indeed, the Supreme Court in reversing the trial court's refusal to order an assessment did not preclude the SOAB assessment from occurring after the defendant was sentenced, implicitly recognizing that an SVP hearing could occur after sentencing. Hence, an SVP hearing may occur after sentencing, although the statute provides for it to transpire before sentencing. It should also be noted that the SOAB has ninety days to submit its report to the district attorney's office after a conviction, which is outside the thirty-day time frame during which the dissent maintains that the trial court has jurisdiction to determine SVP status.

1. The Commonwealth has cited in its brief an unpublished decision from this Court deciding this issue and concluding the trial court retained jurisdiction. *See* Appellant's brief at 17. That case, like other unpublished decisions on the issue, is non-binding and cannot be relied upon by either a party or this Court as binding precedent in deciding the case. *See* IOP § 65.37(A).

Nevertheless, since both parties appealed in *Harris, supra,* before thirty days elapsed, the jurisdictional question related to 42 Pa.C.S. § 5505 [2] did not vest at that time. Further, the question in *Harris, supra,* was when the defendant's judgment of sentence became final for purposes of filing a timely PCRA petition: after our Supreme Court reversed the trial court's refusal to order an SVP assessment or when this Court earlier affirmed the defendant's conviction. The resolution of this query, that the defendant's judgment of sentence became final ninety days after our Supreme Court determined that the trial court erred in refusing to order a Megan's Law assessment, does not answer the subject matter jurisdiction question before this Court.

The dissent implicitly appears to acknowledge that the court could conduct the SVP hearing within thirty days from sentencing and appears to reject the rationale that Appellant's judgment of sentence was not final until the court made its SVP determination. The *Harris* Court, however, found that SVP status, although collateral and not punishment, is part of the judgment of sentence. *Harris, supra* at 1202. Therefore, an argument can be made that 42 Pa.C.S. § 5505 is irrelevant, as the judgment of sentence was not finalized until the court entered the SVP order. Seemingly, if judgment of sentence is not final until the entry of the SVP order, then the dissent's jurisdictional position largely disappears. Assuming *arguendo* that judgment of sentence is final without regard to the SVP status determination, a position with which the *Harris* Court expressly disagreed, the dissent's position still fails.[3]

In *Commonwealth v. Little,* 455 Pa. 163, 314 A.2d 270 (1974), our Supreme Court cogently illustrated the difference between subject matter jurisdiction and personal jurisdiction, stating:

2. The statute provides:

Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa.C.S. § 5505.

3. Although the *Harris* Court determined that a judgment of sentence included the court's Megan's Law status determination, it did not conclude that the judgment of sentence was final after the assessment was completed and the Commonwealth notified the defendant that he would not be subject to the SVP requirements of Megan's Law. Rather, as noted above, it held that judgment of sentence was final ninety days after our Supreme Court remanded for the SOAB assessment. This consequently does not speak to the situation where a defendant is determined to be an SVP after sentencing. Therefore, *Harris* does not answer the question of when a defendant must appeal from his judgment of sentence in a situation such as the one presented herein,

*i.e.,* within thirty days of sentencing when no post-sentence motion is filed, thirty days after the resolution of any timely post-sentence motion, or thirty days from the entry of the SVP order. The resolution to this query would seem to revolve around whether the SVP order renders judgment of sentence final. For its part, the Commonwealth has noted this procedural anomaly, but declined to present substantive argument relative to when is the proper time to appeal.

Instantly, Appellant appealed after the filing of the SVP order. As the SVP order is collateral to the sentence, but a final order relative to the sole issue before the SVP court, a defendant whose SVP hearing occurs after sentencing can obviously appeal from that order regardless of whether it makes judgment of sentence final. However, the question remains whether a similarly situated defendant who has other issues unrelated to his SVP status should await his post-sentence SVP hearing before filing his direct appeal. Since that issue is not before this Court, I leave the answer to that interesting question for another day.

It goes without saying that jurisdiction is of two sorts: jurisdiction of the subject matter in the case, and jurisdiction of the parties involved. An objection to lack of subject-matter jurisdiction can never be waived; it may be raised at any stage in the proceedings by the parties or by a court in its own motion. The familiar axiom that a guilty plea waives all nonjurisdictional issues, is merely a reflection of this general principle. Jurisdiction of the person, on the other hand, may be created by the consent of a party, who thereby waives any objection to defects in the process by which he is brought before the court.

*Id.* at 272 (citations omitted). Equally important, "[s]ubject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented." *Commonwealth v. Bethea,* 574 Pa. 100, 828 A.2d 1066, 1074 (2003). Moreover,

> Controversies arising out of violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. *See* 18 Pa.C.S. § 102. Every jurist within that tier of the unified judicial system is competent to hear and decide a matter arising out of the Crimes Code. Pa. Const. Art. 5, § 5 (establishing the jurisdiction of the courts of common pleas within the unified judicial system).

*Id.* Although a Megan's Law hearing does not entail criminal punishment, *Commonwealth v. Wilson,* 589 Pa. 559, 910 A.2d 10 (2006), is not a criminal proceeding, and is collateral to a defendant's conviction, *Commonwealth v. Leidig,* 598 Pa. 211, 956 A.2d

399 (2008), it can occur only after a conviction under the Crimes Code.[4] Further, 42 Pa.C.S. § 9795.4 confers the court of common pleas with authority to conduct SVP hearings after a criminal conviction.

I find cases dealing with subject matter jurisdiction in criminal cases to be analogous. In addressing the competency of a court in criminal matters, our Supreme Court has held that the existence of a procedural mistake, in this case sentencing prior to the SVP determination, does not divest a court of subject matter jurisdiction. *See Commonwealth v. Jones,* 593 Pa. 295, 929 A.2d 205, 211 (2007). The *Jones* Court held that the question of competency centers around the type of controversy presented for consideration and whether it is of the general class of cases that the court hears and determines. *Id.* Certainly, no one disputes that the common pleas court has original subject matter jurisdiction over SVP hearings.

Additionally, subject matter jurisdiction has a notice requirement. *Little, supra; Jones, supra.* The notice requirement was unquestionably met in the case *sub judice* when the court informed Appellant at sentencing of the Megan's Law obligations and that he would be evaluated to determine if he was an SVP.[5] Accordingly, the question in controversy is whether subject matter jurisdiction for an SVP hearing can be lost thirty days after a sentence is imposed where no appeal is taken. The response to this query is in the negative.

In *In re Melograne,* 571 Pa. 490, 812 A.2d 1164 (2002), our Supreme Court delineated the difference between subject

---

**4.** This is similar to a PCRA hearing, which is considered civil and collateral to a criminal conviction, *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), although it is governed by the rules of criminal procedure and transpires only after a criminal conviction. Of course, unlike the Megan's Law statute, the PCRA statute ex-

pressly discusses jurisdiction. *See* 42 Pa.C.S. § 9545.

**5.** The charges themselves implicate Megan's Law. Thus, once Appellant was charged he was on notice of the potential for an SVP hearing.

matter jurisdiction and a court's authority and power to act. The Court opined that,

> some litigants, while believing they are raising a claim of subject matter jurisdiction, are actually posing a challenge to the tribunal's authority, or power, to act. *See Riedel v. Human Relations Comm'n of Reading,* 559 Pa. 34, 739 A.2d 121, 124 (1999). This confusion between the meaning of the terms "jurisdiction" and "power" is not surprising. While the terms are not synonymous, they are often used interchangeably by judges and litigants alike. *Id.* In *Riedel,* we teased out the distinctions between these terms, explicating that

>> [j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

> *Id.* Claims relating to a tribunal's power are, unlike claims of subject matter jurisdiction, waivable. *Id.* at 125.

*Melograne, supra* at 1167 (bracket in original).

Instantly, the SVP court was competent to decide the issue of Appellant's SVP status, and Appellant was provided ample notice of the proceedings. Hence, Appellant's claim is more properly labeled a challenge to the power of the court to enter the SVP order and conduct the SVP hearing nine months after his sentencing, which he waived by agreeing to that procedure.

A trial court undoubtedly retains both personal and subject matter jurisdiction for thirty days where there is no appeal. 42 Pa.C.S. § 5505. As the majority ably details, since an SVP hearing does not entail criminal punishment or relate to the terms of a defendant's incarceration, 42 Pa.C.S. § 5505 does not prevent the court from entering an SVP order after imposing a sentence. This is because, as the majority points out, the order that resulted from the SVP hearing did not modify the actual sentence received by Appellant in any manner. Appellant still must serve the exact sentence the court originally fashioned. Moreover, as I have previously pointed out, according to *Harris,* SVP status is part of the judgment of sentence. Thus, the SVP order finalized the judgment of sentence.

Likewise, as the Megan's Law statute is not criminal in nature and does not expressly discuss subject matter jurisdiction, it is to be liberally construed to attain its purpose. 1 Pa.C.S. § 1928(c). The purpose of the statute is to protect the safety and welfare of the community by providing the public with adequate information and notice about sex offenders. *See* 42 Pa.C.S. § 9791. Where the court or counsel makes the defendant aware of, as in this case, the possible notification, registration, counseling and other Megan's Law requirements at the time of his plea, *see* 42 Pa.C.S. § 9795.3, which can vary based on a determination of SVP status,[6] there is

---

6. Defendants convicted of certain enumerated crimes are required to abide by registration requirements for life regardless of whether they are determined to be an SVP. *See* 42 Pa.C.S. § 9795.1(b). Based on Appellant's guilty plea to rape of a child, involuntary deviate sexual intercourse, and aggravated indecent assault, he was subject to lifetime registration. 42 Pa.C.S. § 9795.1(b)(2).

simply no prejudice to the defendant in allowing sentencing to transpire prior to an SVP hearing. Permitting defendants and their counsel to agree to waive an SVP hearing before sentencing and then declaring that the common pleas court is without jurisdiction to decide the matter later contravenes that very purpose.[7] What is more, as discussed *supra*, the SVP court was competent to decide the issue of Appellant's SVP status, and Appellant was given adequate notice of the proceedings. Since there is nothing within the Megan's Law statute or our case law prohibiting a defendant from waiving his right to an SVP hearing before sentencing, or declaring that subject matter jurisdiction over SVP matters is lost thirty days after sentencing where no appeal is taken from the sentence, the SVP court retained subject matter jurisdiction.[8] In addition, Appellant waived his challenge to the court's authority to declare him an SVP by agreeing to be sentenced prior to the SVP hearing.

Finally, I wish to acknowledge the pragmatic benefits of permitting a defendant to waive the SVP hearing until after sentencing. It can benefit the defendant by lessening possible aggravating factors. On the other hand, it is beneficial to the Commonwealth because a defendant cannot withdraw his guilty plea after sentencing without establishing a manifest injustice. Where the SVP hearing must be conducted prior to sentencing, a defendant has at least ninety days to decide to withdraw a guilty plea after a thorough colloquy, often in heinous sex crimes cases,[9] by asserting his innocence in direct contravention to his plea. Furthermore, a defendant could withdraw his plea after receiving the SOAB report finding that he meets the requirements of an SVP. Only if the Commonwealth can establish that the withdrawal is prejudicial can the court decline to grant the withdrawal. Thus, there are benefits to both parties in entering the plea and in agreeing to allow the court to enter its sentence before the SVP hearing.

7. It would also permit every defendant sentenced before the court made its SVP determination to escape Megan's Law SVP requirements since subject matter jurisdiction can never be waived and may be raised at any time. The dangerous ramifications of such a decision would be difficult to exaggerate.

8. I note that trial courts, this Court, and our Supreme Court each may *sua sponte* raise an issue of subject matter jurisdiction, yet I am not aware of a single decision by a court in this Commonwealth that has ruled that an SVP court was without jurisdiction because it conducted the SVP hearing after sentencing.

9. In the instant case, Appellant pled guilty to rape of a child, involuntary deviate sexual intercourse, statutory sexual assault, aggravated indecent assault, indecent assault, and corruption of minors. The facts supporting his plea were that he sexually molested his adoptive daughter for a period of four years beginning when she was nine years old. The victim informed police that the first incident involved Appellant rubbing her chest, legs, and vagina and asked her if she wanted him to "stick it in her." *See* Affidavit of Probable Cause. Appellant, in the second specific incident related by the victim, rubbed her chest and vagina and removed both her pants and underwear before removing his own pants. Another occurrence involved Appellant fondling the victim's chest and touching her vagina underneath her clothes for approximately eight minutes, exposing his erect penis and forcing the victim to masturbate him. The final specific incident described by the victim involved Appellant rubbing underneath her clothes her chest, legs, and vagina while kissing and licking her chest and neck. Other occurrences of molestation involved Appellant exposing his penis and forcing her to touch it. The victim informed police that Appellant assaulted her approximately sixty times over four years. Appellant admitted to fondling the victim and kissing her breasts and vagina. He also acknowledged placing her mouth on his penis at least twice and to touching the victim's anus on different occasions.

DISSENTING OPINION BY
LAZARUS, J.:

Our court has stated that:

The integral nature of the SVP process with sentencing is evident from § 9795.4(e)(4)'s requirement that the assessment report by the Board expert "be provided to the agency preparing the presentence investigation." Thus, the pre-sentence investigator is given the report for consideration by the investigator in writing his or her own report and recommendation for sentencing, and we have held the Board report may be utilized by the sentencing court as an aid in sentencing. *Commonwealth v. P.L.S.*, 894 A.2d 120, 132 (Pa.Super.2006), *appeal denied*, 588 Pa. 780, 906 A.2d 542 (2006). The sentencing court can go so far as to consider its own SVP determination as a legal factor in imposing sentence in the aggravated range of the Sentencing Guidelines. *Commonwealth v. Shugars*, 895 A.2d 1270, 1277 (Pa.Super.2006).

*Commonwealth v. Harris*, 972 A.2d 1196, 1201 (Pa.Super.2009). Thus, while the majority concludes that an "SVP order could not possibly be a modification or rescission of the sentencing order," Majority Memorandum, at 4, this statement is at odds with the practical reality that sentencing courts often do take a defendant's SVP status into account when imposing sentences. It is for this reason that the stat-ute mandates that the SOAB assessment must be ordered and completed, and the SOAB report submitted to the District Attorney, *prior to sentencing. See Commonwealth v. Baird*, 856 A.2d 114, 118 (Pa.Super.2004); *see also* 42 Pa.C.S.A. § 9795.4(e)(3) ("[a]t the hearing prior to sentencing, the court shall determine whether the Commonwealth has proven by clear and convincing evidence that the individual is a sexually violent predator.").

Moreover, the majority has cited no authority granting the trial court jurisdiction to impose the given SVP order *nine months* after sentencing. It is one thing to find that a defendant has waived a right; it is another to find that a court has the authority or jurisdiction to act at a given time. Today the majority leaves that critical issue unanswered which, in my opinion, invites trial courts to delay the SVP determination in contravention of the language and spirit of the statute.[1] Thus, I dissent.

---

1. The majority's reliance on *Commonwealth v. Leidig*, 598 Pa. 211, 956 A.2d 399 (2008), also leaves the jurisdictional question unanswered. In *Leidig*, not only did the SOAB report con-clude that the defendant was *not* an SVP, but the report was issued *prior* to defendant being sentenced. *Id.* at 401.