J. S64041/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                 :   PENNSYLVANIA
                                                 :
                          v.                    :
                                                 :
DAVID JONATHAN WEAVER,          :
                                                 :
                   Appellant       :   No. 668 MDA 2015

Appeal from the Judgment of Sentence February 10, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division No(s).: CP-36-CR-0000183-2011
CP-36-CR-0000184-2011

BEFORE: FORD ELLIOTT, P.J.E., WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED NOVEMBER 23, 2015**

Appellant, David Jonathan Weaver, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas. Appellant challenges the court's finding that he was a sexually violent predator ("SVP"). We affirm.[1]

We adopt the facts as set forth in the trial court's opinion. Trial Ct. Op., 6/1/15, at 1-4. Following a jury trial, Appellant was found guilty of indecent assault,[2] indecent exposure,[3] aggravated indecent assault,[4] sexual

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note "[w]e may affirm the trial court on any ground." ***Commonwealth v. Lynch***, 820 A.2d 728, 730 n.3 (Pa. Super. 2003).

[2] 18 Pa.C.S. § 3126(a).

assault,[5] involuntary deviate sexual intercourse,[6] rape,[7] statutory sexual assault,[8] corruption of minors,[9] and unlawful contact with a minor.[10] The court ordered a presentence investigation and a sex offender assessment. On December 19, 2011, following a SVP hearing, the court found Appellant to be a SVP and sentenced him to fourteen to thirty years' imprisonment. Appellant filed a post sentence motion which was denied.

Appellant filed an appeal to this Court. **Commonwealth v. Weaver**, 489 MDA 2012 (unpublished memorandum) (Pa. Super. Dec. 3, 2012). This Court found no merit to Appellant's challenge to "the constitutionality of Megan's Law, in light of Article III, Section 3's restriction against the passage of bills containing more than one subject." **Id.** at 20. This Court relied upon **Commonwealth v. Neiman**, 5 A.3d 353 (Pa. Super. 2010) (*en*

---

[3] 18 Pa.C.S. § 3127(a).

[4] 18 Pa.C.S. § 3125(a).

[5] 18 Pa.C.S. § 3124.1.

[6] 18 Pa.C.S. § 3123(a).

[7] 18 Pa.C.S. § 3121(a).

[8] 18 Pa.C.S. § 3122.1.

[9] 18 Pa.C.S. § 6301(a)(1).

[10] 18 Pa.C.S. § 6318(a).

*banc*).[11]  ***Id.*** at 8.  We vacated "the portion of the judgment of sentence concerning restitution and remanded for resentencing." ***Id.*** at 20.

Appellant filed a petition for allowance of appeal.  The Pennsylvania Supreme Court granted the petition for allowance of appeal based upon ***Commonwealth v. Neiman***, 84 A.3d 603 (Pa. 2013).[12]  ***Commonwealth v. Weaver***, 96 A.3d 987 (Pa. 2014) (Per Curiam) (Order).  The Supreme Court vacated our decision in ***Weaver*** based upon ***Neiman***, and remanded for reconsideration.  ***Id.***  Allocatur was denied as to the remaining issues. ***Id.***  On remand, this Court held:

> In light of our Supreme Court's disposition in ***Neiman*** striking the entirety of Act 152 as violative of the Pennsylvania Constitution, we are constrained to vacate Appellant's judgment of sentence with regard to his determination as a sexually violent predator under Megan's Law III, which subjected him to the registration requirements pursuant to Megan's Law III.  Hence we vacate the judgment of sentence of the trial court entered pursuant to Megan's Law III and remand for resentencing.

***Weaver***, 489 MDA 2012 (unpublished memorandum at 10) (Pa. Super. Sept. 23, 2014).

---

[11] This Court "decline(d) Appellant's invitation to disregard the holding in ***Neiman*** simply because of its current status as 'on appeal' to our Supreme Court." ***Id.*** at 8.

[12] In ***Neiman***, our Supreme Court held that amendments to Megan's Law II, referred to as Megan's Law III, were unconstitutional because the enacting legislation was violative of the Single Subject Rule, which required that each piece of legislation pertain to only one subject.  ***Neiman***, 84 A.3d at 605, 607 n.19, 611-12, 616.

Following a resentencing hearing on February 10, 2015,[13] the court found Appellant to be a SVP and resentenced him to fourteen to thirty years' imprisonment. Appellant filed a post sentence motion, which was denied. This timely appeal followed. Appellant filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal and the trial court filed a responsive opinion.

Appellant raises the following issue for our review:

> Did not the Commonwealth fail to prove [Appellant's] status as a [SVP] when the evidence failed to establish the **element of "predatory" behavior** under the narrower definition of that term appearing in Megan's Law II in contrast to the more expansive definition appearing in Megan's Law III and in the SORNA[14] statute?

Appellant's Brief at 4 (emphasis added).

---

[13] The certified record transmitted on appeal did not initially include the notes of testimony from the February 10th sentencing hearing. Upon informal inquiry by this court, the trial court provided the transcript. We remind Counsel that "the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant . . . ." **Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*) (citation omitted).

[14] We note that Megan's Law, 42 Pa.C.S. §§ 9731-9799, expired on December 20, 2012, and was replaced by the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.41. The definition of a SVP under SORNA is the same as under Megan's Law. **See** note 17 *infra*.

Appellant claims that the testimony of Dr. Robert Stein from the first SVP hearing and sentencing hearing,[15] did not establish that Appellant's "conduct met the **'predatory' element** of the SVP definition" in Megan's Law II. *Id.* at 23 (emphasis added). Dr. Stein quoted the statutory definition of predatory as it appeared in Megan's Law III. *Id.* Based upon the definition of predatory in Megan's Law III, which Appellant contends is much broader than the definition in Megan's Law II, Dr. Stein concluded that Appellant was a SVP. *Id.* at 23-24. Appellant avers that the definition of predatory in Megan's Law II does not apply in the instant case because Appellant did not establish or promote the relationship with his stepdaughter "for the **primar**y purpose of victimization, which is the narrower aspect of the Megan's Law II 'predatory' definition." *Id.* at 31. He concludes his SVP assessment should be reversed. *Id.*

Our review is governed by the following principles:

> A challenge to a determination of SVP status requires us to view the evidence:

> [I]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.

---

[15] At the February 10th resentencing hearing, the court accepted the testimony of Dr. Stein and his written report from the first SVP hearing, based upon the stipulation of counsel. N.T., 2/10/15, at 5.

The scope of review is plenary. "[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is **itself** evidence."

A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing.

*Commonwealth v. Prendes*, 97 A.3d 337, 355-56 (Pa. Super.) (citations

omitted), *appeal denied*, 105 A.3d 736 (Pa. 2014).

The basis for a determination that an individual is a SVP is statutory.

*Id.* at 357.

Therefore, the salient statutory inquiry for SVP designation:

[I]s identification of the impetus behind the commission of the offense; that is, whether it proceeds from a mental defect/personality disorder or another motivating factor. The answer to that question determines, at least theoretically, the extent to which the offender is likely to reoffend, and [S]ection [9799.24][16] provides the criteria by which such likelihood may be gauged.

---

[16] Section 9799.24 provides in pertinent part:

An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

"To deem an individual a sexually violent predator, the Commonwealth must first show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14]. . . .'" **Commonwealth v. Askew**, 907 A.2d 624, 629 (Pa. Super. 2006)[.] **See also** 42 Pa.C.S.A. § 9799.12. "Secondly, the Commonwealth must show that the individual has 'a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses.'" When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP.

*Id.* at 357-58 (some citations omitted).

This Court opined that

with regard to the various assessment factors listed in Section [9799.24], there is no statutory requirement that all of them or any particular number of them be present or absent in order to support an SVP designation. [**Commonwealth v.**] **Meals**, [912 A.2d 213,] 220-23 [(Pa. 2006)]. The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. *Id.* at 222. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities. *See id.* at 221.

Thus, while the Board is to examine all the factors listed under Section [9799.24], the Commonwealth does not have to show that any certain factor is present or absent in a particular case. **Meals**, 912 A.2d at 221. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a

---

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

*Id.* We note these are the same assessment factors as in Megan's Law II. *See* 42 Pa.C.S. § 9795.4.

> mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses. 42 Pa.C.S.A. § 9792. Having conducted a hearing and considered the evidence presented to it, the court then decides whether a defendant is to be designated an SVP and thus made subject to the registration requirements of 42 Pa.C.S.A. § 9795.1(b)(3).

***Commonwealth v. Feucht***, 955 A.2d 377, 381 (Pa. Super. 2008).

> [A] "sexually violent predator" is defined, in pertinent part, as "[a] person who has been convicted of a sexually violent offense . . . and who is determined to be a sexually violent predator under section [9799.24] (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792.[17] **This definition contains no requirement for a determination that the SVP engaged in predatory behavior in the instant offense.** The statutory definition of "predatory," about which the arguments before us revolve, is relevant only in that an SVP must be found to have a mental abnormality or personality disorder which renders the SVP **likely to engage in predatory behavior**. [The a]ppellant does not challenge that determination.

***Commonwealth v. Fletcher***, 947 A.2d 776, 776-77 (Pa. Super. 2008)

(some citations and footnote omitted and some emphasis added) (quoted

with approval in ***Feucht***, 955 A.2d at 381). The ***Fletcher*** Court noted that

"42 Pa.C.S.A. § [9799.24(1)] (listing 'Facts of the current offense' as a

---

[17] A SVP under SORNA is also defined as a person "who, on or after the effective date of this subchapter, is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual **likely to engage in predatory sexually violent offenses**." 42 Pa.C.S. § 9799.12 (emphasis added).

mandatory area of inquiry in assessment); **there is simply not a requirement that the offense be found to have been 'predatory.'** *Id.* at 777 n.1 (emphasis added). This Court concluded that "[b]ecause [the a]ppellant has challenged only one evidentiary insufficiency in his SVP classification, **one which is not a requirement thereof**, we find no merit to his appeal." *Id.* at 777 (emphasis added).

Analogously, in the case *sub judice*, Appellant has challenged only one evidentiary insufficiency in his SVP classification, *viz.*, that the evidence failed to establish the element of predatory behavior. Because there is no requirement that the offense be found to have been predatory, as focus is on whether a defendant is likely to engage in predatory behavior in the future, we find no relief is due. *See Feucht*, 955 A.2d at 381; *Fletcher*, 947 A.2d at 776-77.

Judgment of sentence affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/23/2015</u>

- 10 -

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA  :
:
vs.  :  No. 183-2011, 184-2011
:
DAVID JONATHAN WEAVER  :

## OPINION

BY: KNISELY, J.

June 1, 2015

Defendant David Jonathan Weaver has filed a direct appeal to the Superior Court of

Pennsylvania from his judgment of sentence imposed on February 10, 2015 and finalized by the

Court's denial of his post-sentence Motion to Modify Sentence on March 16, 2015. On appeal,

Defendant alleges that there was insufficient evidence to prove Defendant's adjudication as a

sexually violent predator (SVP). This Opinion is written pursuant to Rule 1925(a) of the

Pennsylvania Rules of Appellate Procedure.

## BACKGROUND

The charges in this matter stemmed from nine years of Defendant sexually violating his

minor stepdaughter, K.H. Defendant began his course of inappropriately touching K.H. when

she was nine years old. At that time, Defendant had been married to K.H's mother for one year

and had lived with her for two years. Defendant and nine-year-old K.H. were in Defendant's

truck heading home from the mall when Defendant forced K.H.'s hand down his pants and told

her to rub his penis. Over time, the contacts escalated to vaginal and anal penetration. The

conduct continued for the following nine years until K.H. left for college.

The year prior to K.H. leaving for college, Defendant went on a hunting trip with his friend, Tim Heller. Defendant discussed his inappropriate sexual acts on K.H. with Mr. Heller. Sometime thereafter, Mr. Heller disclosed this information with a police officer, who was also his brother-in-law. His brother-in-law relayed the information to the Lancaster Bureau of Police and an investigation into the matter began.

In the fall of 2010, K.H. was unaware of the investigation and proceeded to college. When she came home for Thanksgiving break, Detective Harnish reached K.H. by phone. She agreed to meet him at the police station. During the interview, K.H. discussed what Defendant did to her, but she did not go into detail. She did not wish to press charges at that time. Thereafter, K.H. went back to college until Christmas break. When K.H. returned to Lancaster, she told her mother that Defendant raped her. On December 22, 2010, K.H. returned to the police station where she spoke to Detective Harnish and Officer Ramos. She provided more detail than she had during her earlier interview in November.

As part of her meeting, she consented to conducting wiretap telephone conversations with Defendant. K.H. made a series of three telephone conversations with Defendant. K.H. explained that she was in therapy at college and needed help remembering everything that happened to her. Defendant told K.H. that everything started when she was twelve. He expressed remorse and contributed his actions to weakness, but did not provide detailed answers to K.H.'s questions. Rather, he asked her several times to not talk to her mother and to make sure she saw a private counselor that would keep sessions confidential.

2

On December 22, 2010, Defendant was charged with indecent assault[1] (five counts), indecent exposure,[2] aggravated indecent assault,[3] rape[4] (two counts), statutory sexual assault,[5] involuntary deviate sexual intercourse[6] (five counts), sexual assault[7] (three counts), criminal attempt at aggravated indecent assault,[8] corruption of minors,[9] and unlawful contact with a minor,[10] all related to incidents with K.H. Defendant proceeded to trial on July 11, 2011. At trial, the Commonwealth presented Mr. Heller, who testified about his hunting trip with Defendant and the disclosures Defendant made during the trip. Then, K.H. took the stand. She recounted numerous sexual assaults and inappropriate actions by Defendant. K.H. was able to recall different incidents of sexual contact with specificity. She explained that although many of the incidents blended together because of the numerous occurrences, she was able to remember certain encounters because they coincided with significant times in her life.

K.H. also authenticated her taped telephone conversations, which the Commonwealth then played for the jury. K.H. described a birthmark on Defendant's penis that was not visible when it was flaccid. Detective Harnish later corroborated K.H.'s description of the birthmark with photographs obtained pursuant to a warrant. Detective Harnish, the investigating officer in this matter, was present and in the courtroom during K.H.'s testimony. As a witness, he told the jury that K.H.'s earlier testimony was consistent with what she told him during their December 2010 meeting at the police station.

---

[1]   18 Pa.C.S.A. § 3126(a).
[2]   18 P.S. § 3127(a).
[3]   18 Pa.C.S.A. §3215(a)(7).
[4]   18 Pa.C.S.A. § 3121(a)(1).
[5]   18 Pa.C.S.A. §3122.1.
[6]   18 Pa.C.S.A. § 3123(a).
[7]   18 Pa.C.S.A. § 3124.1.
[8]   18 Pa.C.S.A. § 901(a).
[9]   18 P.S. § 6301 (a)(1).
[10]   18 Pa.C.S.A. § 6318(a)(1).

Prior to closing arguments, defense counsel made numerous motions for judgment of acquittal. Defense counsel argued, regarding various counts, that the testimony presented lacked specificity compared to the allegations in the Information. Three counts were ultimately dismissed. Regarding the criminal attempt at aggravated indecent assault count, the Commonwealth asserted that Defendant attempted to insert his fingers into the vagina of K.H. in August 2010. Defense counsel argued K.H.'s testimony that described the incident as "same old, same old" was insufficient to submit the count to the jury. The Court agreed and this count was dismissed.

Regarding two counts of indecent assault by forcible compulsion, defense counsel argued the elements as alleged were not made out by the evidence presented. The Commonwealth responded that the Information listed the correct statute and grading, but contained a technical defect in that the definitions were incorrect. The Commonwealth initially sought to amend the Information; however, prior to the Court's ruling, the counts were dismissed by agreement of the parties. The remaining seventeen counts were renumbered, also by agreement of the parties.

Following deliberations, the jury found Defendant guilty on all but three counts, indecent assault without consent, indecent sexual assault by forcible compulsion, and rape by forcible compulsion. The Court ordered a presentence investigation and a sex offender assessment.

The Pennsylvania Sexual Offenders Assessment Board ("SOAB") submitted their opinion that Defendant met the criteria for classification as a sexually violent predator ("SVP") under Megan's Law. On December 19, 2011, Defendant proceeded to a hearing on his SVP status and sentencing. During the hearing, ADA Mansfield questioned Dr. Stein, the evaluating member of the SOAB, as to whether Defendant met the criteria for classification as an SVP. (N.T. SVP Hearing and Sentencing, 12/19/11, pp. 14-19). Dr. Stein testified that the statute

4

requires two main criteria, mental abnormality and predatory behavior. (*Id.* at 17). Dr. Stein testified that there was sufficient evidence to conclude that Defendant suffered from pedophilia and paraphilia, which are considered mental abnormalities under the DSM-IV. (*Id.* at 17-18). Dr. Stein then testified that "[P]redatory is defined as an act directed at either a stranger or if the person was familiar with whom a relationship has been either initiated or established or maintained or promoted for sexual victimizations." (*Id.* at 18-19). He testified that "[M]any acts of sexual misconduct over many years serve to establish and maintain and promote a sexually victimizing relationship. Verbal threats and verbal manipulation were used as well to maintain this relationship. There was sufficient evidence for predatory behavior." (*Id.* at 19).

Dr. Stein also discussed the fifteen factors that the statute requires the SOAB to address before coming to a conclusion. (*Id.* at 14). Dr. Stein testified to the following information regarding those fifteen factors: (1) there was a single victim; (2) Dr. Stein did not comment on whether the individual exceeded the means necessary to achieve the offense; (3) the contact involved sexual touching and penetrative acts of oral, anal, and vaginal intercourse, which was consistent with deviant sexual interests; (4) the victim was the stepdaughter of the offender; (5) the victim was age nine to eighteen, meaning the victim was pre-pubescent for at least two years; (6) there was no indication of unusual cruelty; (7) the victim is a college student and should be presumed to be of normal mental capacity; (8) there was no relevant criminal history; (9) Dr. Stein did not comment on whether the individual completed any prior sentences; (10) there was no prior criminal history of sex offending, so there was no history of sex offender treatment; (11) over the course of the conduct, the defendant was age twenty-four to thirty-three while the victim was age nine to eighteen, which is associated with sexual deviance; (12) there was a history of occasional use of marijuana; (13) there was a history of mild depression; (14) there were no other

5

additional behaviors or characteristics relevant to the report; (15) sustained sexual interest in a child is associated with increased risk of reoffending. (*Id.* at 15-17). Dr. Stein also testified that while an individual can meet the criteria for SVP status based on one factor alone, it is unlikely; for this particular Defendant, the factors that stood out were the nature of the sexual contact and the age of the victim. (*Id.* at 21).

With the benefit of the Board's assessment and a post-sentence investigation, the Court deemed Defendant a sexually violent predator and sentenced him to an aggregate term of fourteen to thirty years of state imprisonment. On December 29, 2011, Defendant filed a motion for post-sentence relief which was denied by Order of January 24, 2012. Defendant subsequently appealed and on September 23, 2014, the Superior Court vacated a portion of the sentence and remanded the case for re-sentencing. On February 10, 2015, Defendant appeared for re-sentencing. The prior testimony of Dr. Stein was incorporated into the proceeding, but the Commonwealth produced no new evidence. The Court found Defendant to be an SVP and re-sentenced Defendant to an aggregate sentence of fourteen to thirty years of incarceration. On February 19, 2015, Defendant filed a Motion for Post-Sentence Relief, which was denied on March 16, 2015. The instant appeal followed.

## DISCUSSION

Defendant alleges that the evidence was insufficient to prove Defendant's adjudication as an SVP because Dr. Stein's testimony pertained to the definition of "predatory" appearing in Megan's Law III (Act 152 of 2004). In *Com. v. Nieman*, 84 A.3d 603 (Pa. 2013), the Pennsylvania Supreme Court held that Act 152 of 2004, which included Megan's Law III, was unconstitutional because it violates the "single subject" rule of Article III, Section 3 of the Pennsylvania Constitution; the Court struck down Act 152 in its entirety. *Nieman,* 84 A.3d at

6

613, 616. Initially, the Court notes that "Megan's Law II provides that the trial court shall 'determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n] [SVP].'" *Com. v. Whanger*, 30 A.3d 1212, 1215 (Pa. Super. 2011)(citing *Com. v. Askew*, 907 A.2d 624 (Pa. Super. 2006)).

The definition for "predatory" under Megan's Law II differs from the definition under Megan's Law III. Under Megan's Law II, "predatory" is defined as: "An act directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." (Act of May 10, 2000, P.L. 74, No. 18). Under Megan's Law III, "predatory" is defined as: "An act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." The definition under Megan's Law III is broader than the definition under Megan's Law II. While Dr. Stein's testimony at the hearing on February 10, 2015 related to the Megan's Law III definition of "predatory," it is still acceptable to prove the Megan's Law II definition of "predatory."

Defendant argues that he did not establish or promote a relationship with the victim for the *primary* purpose of victimization because they lived in the same household for three years before the sexual abuse started. The Superior Court of Pennsylvania dealt with a substantially similar fact pattern in *Commonwealth v. Whanger*. In *Whanger*, the defendant began sexually abusing his adopted daughter when she was nine years old and the abuse continued for approximately four years and four months. *Com. v. Whanger*, 30 A.3d 1212, 1216 (Pa. Super. 2011). The defendant argued that the offenses against the victim were opportunistic, not predatory, because he lived with the victim and served as a father figure. *Id.* at 1217. Despite being sentenced under Megan's Law II, the Superior Court defined predatory behavior as "an act

7

directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted in whole or in part in order to facilitate or support victimization." *Id.* The expert testimony, however, pertained to the Megan's Law II definition of predatory. In *Whanger*, the expert testified that "although the relationship was probably not established just to exploit the victim, [Appellant] served in a role of adoptive father until he made a conscious decision to engage in deviant sexual conduct. The relationship became one of sexual exploitation, which continued for more than four years. This supports the factor that [Appellant] in fact looked at and utilized the relationship with his adoptive daughter in an exploitive manner." *Id.* (internal citations omitted). The Superior Court found that the defendant's "claim that the prolonged period of abuse was opportunistic, not predatory, is unfounded based on the expert findings of [the expert's] testimony and assessment..." *Id.*

In the instant case, the Court deals with a substantially similar situation. Defendant is the victim's stepfather. After Defendant had been married to K.H's mother for one year and had lived with her for two years, he began sexually abusing K.H. when she was nine years old. While he perhaps did not establish a relationship with K.H. for the sole purpose of victimization, Defendant, like the defendant in *Whanger*, made a conscious decision to engage in deviant sexual conduct. That sexual abuse continued for nine years from the time K.H. was nine until she was eighteen and left for college. Dr. Stein testified as to each of the fifteen factors to be considered in determining whether an offender is an SVP. Defendant committed many acts of sexual misconduct over a prolonged period of time. Those acts served to establish and promote a sexually victimizing relationship. Dr. Stein testified that verbal threats and verbal manipulation were used as well to maintain the relationship. Based on the evidence presented at the SVP hearing, including the fact that Defendant sexually abused his step-daughter for nine years,

8

starting at age 9 and including sexual touching and penetrative acts of oral, anal, and vaginal intercourse, the Court found by clear and convincing evidence that Defendant was a sexually violent predator.

Accordingly, the Court respectfully submits that Defendant's judgment of sentence and status as an SVP should be affirmed and his appeal dismissed.

I certify this document to be filed In the Lancaster County Office of the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

BY THE COURT:

HOWARD F. KNISELY
JUDGE

Attest:

Copies to:
    James J. Karl, Chief Public Defender
    James M. Reeder, Assistant District Attorney