J-A27005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSEPH N. CAMPINELLI, | |
| Appellant | No. 121 WDA 2017 |

Appeal from the Judgment of Sentence November 29, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):
CP-02-CR-0001697-2016
CP-02-CR-0001698-2016
CP-02-CR-0005549-2016

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED JANUARY 17, 2018**

Appellant, Joseph N. Campinelli, appeals from the judgment of sentence of an aggregate term of 27-54 years' incarceration, imposed after a jury convicted him of sexual offenses committed against three minor female victims.  In this appeal, Appellant challenges the discretionary aspects of his sentence.  After careful review, we vacate the trial court's order designating Appellant as a Sexually Violent Predator (SVP), but otherwise affirm his judgment of sentence, and remand for the trial court to advise him of his obligations under Pennsylvania's Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10 *et seq*.

The trial court summarized the facts adduced at trial as follows:

[T]he evidence presented at trial established that [E.Q.] met [Appellant] when she was 13 years old. At the time, [E.Q.] was in and out of placement, sometimes living with her mother and sometimes living at various facilities including Circle C, the Termon Avenue facility and Bethesda Children's Home. She would often go to [Appellant]'s house to get away from her mother or to run away from her current placement. Beginning from the first time she met him, whenever [E.Q.] went to [Appellant]'s house, she would perform oral sex on him and afterwards he would give her money and marijuana. He also served her vodka and an alcoholic beverage known as a "buzz bomb[."]

On two (2) separate occasions, [E.Q.] brought her friend [H.B.], whom she knew from placement and her cousin, [T.C.,] with her to [Appellant]'s house. When she brought [H.B], then age 13, after [E.Q.] performed oral sex on [Appellant], he instructed her to ask [H.B] if he could perform oral sex on her. [E.Q.] discussed the proposition with [H.B], who requested $250 as payment. [H.B] then went into [Appellant]'s bedroom and found [Appellant] sitting on the bed with his pants unzipped and his penis exposed. [H.B.] performed oral sex on [Appellant] but then stopped. Later, [Appellant] gave her $250.

When she was 15 years old, [E.Q.] brought her cousin, [T.C.], to [Appellant]'s house while she was on a home pass from her placement at Bethesda Children's Home. Again, upon arriving, [E.Q.] went into the [Appellant]'s bedroom while [T.C.] waited outside. When [T.C.] was alone with [Appellant], he asked her for oral sex, and offered to give her money if she would "fuck him[."] He then pulled his penis out of his pants and jiggled it, then grabbed her head and attempted to force it down onto his penis. [T.C.] refused to perform oral sex on [Appellant] and tried to leave the room, prompting [Appellant] to call her a "skank." When [Appellant] stood in front of the door and blocked her exit, [T.C.] hit him, causing him to fall over and allowing her to leave the room.

The Commonwealth also presented a series of text messages between [Appellant] and [E.Q.], wherein he repeatedly encouraged her to lie during her testimony or to simply not show up for trial.

Trial Court Opinion (TCO), 6/20/17, at 2-3.

The Commonwealth charged Appellant, in three separate criminal informations,[1] as follows:

On January 27, 2016, [Appellant] was charged at [CP-02-CR-0001697-2016] with the following: Count 1 - Involuntary Deviate Sexual Intercourse ("IDSI") (F1), 18 Pa.C.S.[] § 3123(a)(7); Count 2 - Unlawful Contact with a Minor (F1), 18 Pa.C.S.[] § 6318(a)(1); Count 3 - Corruption of Minors (F3), 18 Pa.C.S.[] § 6301(a)(1)(ii); Count 4 - Endangering the Welfare of Children (F3), 18 Pa.C.S.[] § 4304(a)(1); Count 5 - Promoting Prostitution of a Minor (F3), 18 Pa.C.S.[] § 5902(b)(13); Count 6 - Indecent Assault (M2), 18 Pa.C.S.[] § 3126(a)(8); Count 7 - Indecent Exposure (M1), 18 Pa.C.S.[] § 3127(a); Count 8 - Sell/Furnishing Liquor to a Minor (M3), 18 Pa.C.S.[] § 6310.1(a).

On January 19, 2016, [Appellant] was charged at [CP-02-CR-0001698-2016] with the following: Count 1 - IDSI (F1), 18 Pa.C.S.[] § 3123(a)(7); Count 2 – Unlawful Contact with a Minor (F1), 18 Pa.C.S.[] § 6318(a)(1); Count 3 – Promoting Prostitution of a Minor (F3), 18 Pa.C.S.[] § 5902(b)(13); Count 4 - Corruption of Minors (F3), 18 Pa.C.S.[] § 6301(a)(1)(ii); Count 5 - Endangering the Welfare of Children (F3), 18 Pa.C.S.[] § 4304(a)(1); Count 6 - Indecent Assault (M2), 18 Pa.C.S.[] § 3126(a)(8); and Count 7 - Indecent Exposure (M1), 18 Pa.C.S.[] § 3127(a).

On March 17, 2016, [Appellant] was charged at [CP-02-CR-0005549-2016] with the following: Count 1- [Attempted] IDSI (F1), 18 Pa.C.S.[] § 901(a); Count 2 - Unlawful Contact with a Minor (F1), 18 Pa.C.S.[] § 6318(a)(1); Count 3 - Criminal Solicitation - Statutory Sexual Assault (F1), 18 Pa.C.S.[] § 902(a); Count 4 – Promoting Prostitution of a Minor (F3), 18 Pa.C.S.[] § 5902(b)(16); Count 5 – Endangering the Welfare of Children (F3), 18 Pa.C.S.[] § 4304(a)(1); Count 6 - Corruption of Minors (F3), 18 Pa.C.S.[] § 6301(a)(1)(ii); Count 7 - Indecent Assault (M2), 18 Pa.C.S.[] § 3126(a)(8); Count 8 - Indecent

_____

[1] Presumably, the three criminal informations pertained to each of the three minor victims. It is not immediately clear which information and related case number pertains to each victim, but as will become apparent, *infra*, that distinction is not important for the purposes of this appeal.

Exposure (M1), 18 Pa.C.S.[] § 3127(a); Count 9 - Harassment (M3), 18 Pa.C.S.[] § 2709(a)(4); Count 10 - Open Lewdness (M3), 18 Pa.C.S.[] § 5901; Count 11 - Sale of Tobacco (S), 18 Pa.C.S.[] § 6305(a)(2); Count 12 - False Imprisonment of Minor (F2), 18 Pa. C.S.A. § 2903(b).

Appellant's Brief at 10-11. The Commonwealth withdrew Count 12 (false imprisonment) at CP-02-CR-0005549-2016 prior to trial.

Appellant's consolidated jury trial, which began on September 15, 2016, ended with his conviction on all counts, except for his acquittal at Count 4 of CP-02-CR-0005549-2016. On November 29, 2016, the trial court sentenced Appellant to consecutive terms of 9-18 years' incarceration for the first count at each criminal information. That is, the court sentenced Appellant to 9-18 years' incarceration for each count of IDSI, representing a separate sentence for each of the three minor victims. Appellant received no further penalty by the trial court at each of the remaining 22 counts. A determination regarding Appellant's SVP status was deferred until a hearing was held on March 3, 2017.

Appellant filed a timely post-sentence motion challenging the discretionary aspects of his sentence on December 9, 2016, which the trial court denied on December 15, 2016. Appellant filed a timely notice of appeal on January 13, 2017. Following the SVP hearing held on March 3, 2017, the trial court designated Appellant as an SVP in a March 9, 2017 order purporting to amend the November 29, 2016 judgment of sentence.

Appellant now presents the following questions for our review:

I.   Did the [t]rial [c]ourt fail to begin its sentencing consideration with the proper sentencing guidelines, as required by settled case law and 42 Pa.C.S.[] § 9781(d)?

II.  Did the [t]rial [c]ourt fail to adequately consider and apply all of the relevant sentencing criteria, including the protection of the public, the gravity of the offense/violation, and especially [Appellant]'s character and rehabilitative needs, as required under 42 Pa.C.S.[] § 9721(b)[]?

Appellant's Brief at 9.

Both of Appellant's claims concern the trial court's discretion in imposing his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were

- 5 -

either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13.

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

Instantly, we note that Appellant preserved his sentencing claims in a timely post-sentence motion, filed a timely notice of appeal, and provided a Rule 2119(f) statement in his brief. Moreover, the Commonwealth concedes that Appellant's claims raise substantial questions for our review. Commonwealth's Brief at 10. We agree. *See Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007) ("A claim that the sentencing court misapplied the Sentencing Guidelines presents a substantial question."); *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (holding a claim that "the [t]rial [c]ourt failed to consider the factors set forth in 42 Pa.C.S.[] § 9721(b) … raise[s] a substantial question"). Accordingly, we will review the merits of Appellant's sentencing claims.

As is now axiomatic,

[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a[n] … abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch*, 936 A.2d 515, 517–18 (Pa. Super. 2007) (citation omitted).

In his first issue, Appellant contends that the trial court incorrectly calculated his Prior Record Score ("PRS") under the sentencing guidelines, or that the court's calculation was ambiguous, ostensibly rendering his sentence manifestly unreasonable. *See Commonwealth v. Scullin*, 607 A.2d 750, 754 (Pa. Super. 1992) ("We find, in conformity with existing case law, that although a sentencing court is vested with the right, if it properly exercises its discretion, to sentence outside of the guidelines, it must begin from the correct starting point."). Where it is clear that a court failed to apply the appropriate guidelines as a starting point, this Court must vacate the sentence and remand for resentencing. *Id.* Appellant argues that:

> In the cases at bar, it is unclear from the record which, if any, Sentencing Guidelines the [t]rial [c]ourt utilized. Sentencing Counsel argued at sentencing that [Appellant]'s only conviction was from the mid-1980's, and that this stale criminal history should have resulted in a [PRS] of zero for [Appellant]. After imposing an aggregate sentence of 27-54 years total state incarceration, the [t]rial [c]ourt stated, "I would also say that the guidelines having been submitted were a 12 and a 4. However, I put weight on, not so much on the [PRS], because I agree with [defense counsel]." This statement from the [t]rial [c]ourt does not indicate which set of Sentencing Guidelines was utilized in sentencing [Appellant].

Appellant's Brief at 22-23 (citations omitted).

We disagree. The trial court had *no discretion* to ignore Appellant's prior conviction for purposes of calculating his PRS. Appellant's contention that a "stale" criminal history "should have resulted in a [PRS] of zero" does

not find support in any existing case law. **Id.** Appellant cites to no authority suggesting that a trial court may ignore prior convictions, however dated, in calculating a PRS. As this Court has previously stated, neither "the Sentencing Code nor the sentencing guidelines place any time limits on offenses to be included in the [PRS], as such criminal history is relevant to sentencing." **Commonwealth v. Diamond**, 945 A.2d 252, 259 (Pa. Super. 2008) (quotation marks and citation omitted).

In this context, the trial court court's statement, that it did not place much weight on Appellant's PRS, makes perfect sense. The court was obligated to calculate Appellant's PRS mechanically and without regard to the staleness of Appellant's prior conviction. However, because the trial court retains discretion to depart from the guideline sentencing recommendations, it could accept defense counsel's argument to afford those recommendations lesser weight because of the staleness of the conviction underlying the PRS calculation. Accordingly, we ascertain no abuse of the trial court's discretion to place less weight on the guidelines than it would have done had Appellant's prior conviction been more recent. Moreover, the sentence guideline forms completed by the trial court clearly indicate that a PRS of 4 was applied for each of the three sentences. **See** Guideline Sentence Form, 11/29/2016, at 1 (single page) (CP-02-CR-0001697-2016); Guideline Sentence Form, 11/29/2016, at 1 (single page) (CP-02-CR-0001698-2016); Guideline Sentence Form, 11/29/2016, at 1

(single page) (CP-02-CR-0005549-2016). For these reasons, we conclude that Appellant's first claim lacks merit.

Next, Appellant contends that the trial court failed to consider relevant sentencing criteria when imposing his sentence. *See* 42 Pa.C.S. § 9721(b) ("[T]he court *shall* follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.") (emphasis added). Specifically, Appellant argues:

> The record in these cases insufficiently supports the [t]rial [c]ourt's reasoning behind [Appellant]'s sentence. The record does not contain any mention of [Appellant]'s rehabilitative needs (including his mental health issues), the [t]rial [c]ourt did not provide its reasoning for why imposing a sentence of total confinement was necessary, and the [t]rial [c]ourt dismissed [Appellant]'s physical ailments because he "had at least some of those ailments" during the incidents at issue. The cumulative sum of this insufficient and barren record is a manifestly unreasonable sentence.

Appellant's Brief at 28-29.

The trial court addressed this claims as follows:

> At the conclusion of the trial, this [c]ourt ordered a Pre-Sentence Investigation Report, and later acknowledged it had read and considered [it] prior to the sentencing hearing. At the hearing, this [c]ourt gave [Appellant] the opportunity to speak, which he declined, and listened to the arguments of his attorney, who noted that [Appellant] was 77 years old and currently suffering from high blood pressure, heart disease for which he required a defibrillator and orthopedic issues requiring his use of a walker. This [c]ourt also considered the arguments of the Assistant District Attorney and victim impact statements from [H.B.] and

- 9 -

[E.Q.]. It then placed its reasons for imposing sentence on the record:

> THE COURT: Mr. Campinelli, although I recognize that you have a number of physical ailments, I also recognize that you would have had at least some of these ailments when you were sexually assaulting these three young ladies.
>
> You have taken something from these young ladies that can never be returned to them. You have taken away their ability to trust. You were called their godfather. They trusted you.
>
> You had sex with one of the children for a period of years. A third child you tried to solicit. You have a pattern of abuse hurting all three victims. All the girls were about 15 years old. They're going to have to carry this with them for the rest of their lives.

[Sentencing Hearing (SH), 11/29/16, at 9].

As the record reflects, this [c]ourt appropriately read and considered the pre-sentence investigation report, considered the factors and severity of the present offense, evaluated [Appellant]'s potential for rehabilitation and imposed a sentence which took all of these factors into consideration.

Neither is the [Appellant]'s claim that the sentence was excessive due to his "advanced age and failing health" persuasive. [Appellant]'s past medical history is significant for a heart attack with subsequent implantation of a pacemaker, removal of a kidney due to cancer and gastric bypass surgery. In May, 2016, [Appellant] fell and fractured his hip, necessitating surgical repair with plates and screws. He now walks with a walker. He takes blood pressure medication. Although [Appellant] has some physical and medical issues, he is not seriously ill and he is able to walk and drive, as the victims testified.

TCO at 6-7.

First, Appellant asserts that the trial court failed to consider certain factors regarding his physical and mental health at the time of sentencing. However, it is clear that the trial court acknowledged, generally, Appellant's

"ailments," SH at 9, after defense counsel brought specific concerns to the court's attention at the sentencing hearing, SH at 3-4. The fact that the trial court failed to methodically list each specific illness or injury in its statement is not a serious attack on the court's sentencing discretion. "[A] sentencing judge may satisfy requirement of disclosure on the record of his reasons for imposition of a particular sentence without providing a detailed, highly technical statement." *Commonwealth v. Hunzer*, 868 A.2d 498, 514 (Pa. Super. 2005).

Moreover, at the outset of Appellant's sentencing hearing, the trial court stated that it had "ordered, read[,] and considered the [p]re[s]entence [r]eport." SH at 2. As this Court stated in *Moury*, "[w]here the sentencing court had the benefit of a presentence investigation report…, we can assume the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" *Moury*, 992 A.2d at 171 (quoting *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988)). Appellant did not object to the contents of the presentence report at his sentencing hearing, nor does he argue now that the presentence report inadequately listed or summarized his various health concerns. Rather, Appellant's argument narrowly focuses on the trial court's failure to detail each of his physical and mental health issues, or that the sentence imposed was inconsistent with due consideration of those matters.

We are unconvinced by these arguments. The court was aware of and expressly considered Appellant's presentence report, and there is nothing about the imposed sentence which demonstrates, implicitly, that those concerns were wholly ignored rather than simply outweighed, in the court's view, by other sentencing factors, such as "the protection of the public, [and] the gravity of the offense as it relates to the impact on the life of the victim and on the community[.]" 42 Pa.C.S. § 9721(b). It is also apparent from the record that the trial court found that the gravity of Appellant's crimes – a repeated pattern of sexual offenses committed against minor victims – as well as the need to protect the public from such acts, ultimately outweighed its consideration of Appellant's rehabilitative needs.

Second, Appellant contends that his "physical ailments indicated that the protection of the public was at least mitigated by his immobilization." Appellant's Brief at 28. We disagree. There may be numerous crimes that Appellant cannot physically commit due to his present condition, thereby limiting the deterrent effect of incarceration *with respect to those hypothetical crimes*. However, the trial court appears to be justified in noting that the deterrent effect of incarceration in this case is not mitigated by Appellant's ostensible immobilization with regard to crimes for which he was convicted. It would be a strange contention for the trial court to argue that incarceration was necessary for the protection of the public to prevent crimes wholly different in physical requirements from the crimes for which Appellant was actually convicted - crimes which he was able commit with

most or all of the physical ailments he faces now.[2]   Thus, we agree with the trial court that Appellant's physical ailments were not particularly germane to the protection-of-the-public sentencing factor in the manner suggested by Appellant in the specific circumstances of this case.

Third, Appellant contends that the trial court "did not place any consideration on … the fact that the acts in these cases did not consist of any violence, force or threat of force, and were not brutal acts in any way." Appellant's Brief at 30.   As noted by the Commonwealth, this contention is simply belied by the record.   Commonwealth's Brief at 18 n.6.   As provided above, the trial court's summary of the trial evidence regarding victim T.C. indicated that Appellant

> pulled his penis out of his pants and jiggled it, then grabbed [T.C.'s] head and ***attempted to force it down onto his penis***. [T.C.] refused to perform oral sex on [Appellant] and tried to leave the room, prompting [Appellant] to call her a "skank." When [Appellant] ***stood in front of the door and blocked her exit***, [T.C.] hit him, causing him to fall over and allowing her to leave the room.

TCO at 3 (emphasis added).   Appellant attempted to use force to commit illegal sexual acts with T.C., and T.C. was required to use force to prevent him from committing those acts.   Thus, we reject Appellant's non-violent characterization of his crimes.

---

[2] Nowhere in Appellant's argument does he contend that his health has deteriorated significantly since the time he committed his crimes.

Fourth, we recognize that Appellant's aggregate sentence may appear harsh to some, especially in light of the fact that he has been effectively condemned to live out his remaining years in prison.[3] However, the moral and ethical issues underpinning such a characterization of his sentence are not resolved, or at least not clearly resolved, in favor of the notion that Appellant's advanced age and/or ill-health should be a dispositive factor in determining the reasonableness of his sentence. The question before us is not whether Appellant's sentence is harsh (perhaps, a *de facto* life sentence is always harsh). The question before us is whether Appellant's sentence is so **unduly** harsh that it is **manifestly unreasonable**.

We have rejected each of Appellant's specific assertions as to why that might be the case. We feel compelled to reject the general notion that permeates throughout Appellant's arguments, which is that his advanced age and/or ill-health *must be substantial or dispositive considerations* at sentencing. Certainly, a sentencing court cannot ignore or disregard a defendant's health or age when constructing a sentence. However, reasonable arguments can be made as to whether advanced age and/or ill-health, considered in isolation, should weigh in favor of more, or less,

---

[3] Appellant was born in 1939, and his aggregate sentence of 27-54 years' incarceration commenced on November 29, 2016. Accordingly, Appellant will not be eligible for parole until after his 104th birthday.

punishment.[4]    Thus, we reject the general notion that Appellant's ill-health or advanced age somehow compelled the trial court to sentence him less harshly than it would have had Appellant been younger and healthier.  For each of the aforementioned reasons, we conclude that Appellant's discretionary-aspects-of-sentencing claim lacks merit.

_____

[4] To the extent that Appellant is making such an argument, he appeals to a general and perhaps unfounded sentiment that offenders who are closer to the end of their lives, due to ill-health and/or advanced age, are less deserving of punishment than those expected to live longer.  It is not clear to this Court why that would necessarily be the case.  When criminal defendants are young, the argument is made that because their greater potential for rehabilitation (compared to older counterparts), and because of their immature decision-making capabilities (again, compared to older defendants), they are less deserving of punishment.  This theory has been vindicated by relatively recent landmark decisions by the United States Supreme Court.

The corollary to such an argument, however, could be that the old are more deserving of punishment for their crimes than younger defendants, because there is less hope and time for rehabilitation (compared to younger defendants), because they are more accountable for their actions due to superior decision-making capabilities (compared to younger defendants).  Of course, each case might present a unique set of circumstances that defies these general notions of fairness in sentencing with respect to a defendant's age.   All of these real and theoretical concerns play a part in how one conceives of the 'harshness' of a given sentence.    All this is to say that we reject Appellant's discretionary aspects claim to the extent that it relies on such general and debatable notions of fairness with regard to age or health-based distinctions in sentencing.  It is not clear to this Court that the elderly should be afforded sentencing discounts when they commit serious crimes, as were committed in this case.    Although Appellant does not explicitly frame his arguments in such a manner, we detect and reject the implicit suggestion that age and/or ill-health, when sufficiently advanced, must override other sentencing considerations, such as the gravity of the offense or the protection of the public.

Finally, we are compelled to *sua sponte* vacate an illegal aspect of Appellant's sentence, namely, the March 3, 2017 order deeming him an SVP. **See Commonwealth v. Butler**, No. 1225 WDA 2016, \*6 (Pa. Super. filed Oct. 31, 2017) (concluding that the issue discussed, ***infra***, implicates the legality of a defendant's sentence).[5] In **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), our Supreme Court held that the registration requirements under SORNA constitute criminal punishment, thus overturning prior decisions deeming those registration requirements civil in nature. ***Id.*** at 1218. On October 31, 2017, this Court ruled that,

> since our Supreme Court has held [in **Muniz**] that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under **Apprendi** [***v. New Jersey***, 530 U.S. 466 (2000),] and **Alleyne** [***v. United States***, 133 S.Ct. 2151, 2163 (2013)], a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.[] § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny.

---

[5] We note that Appellant filed an Application for Post-Submission Communication on November 21, 2017, directing this Court's attention to the ruling in **Butler**, which had been filed after Appellant presented his case at oral argument on October 24, 2017. We granted Appellant's application on November 30, 2017. Appellant filed a post-submission letter to this Court on December 7, 2017, seeking application of **Butler**.

***Butler***, No. 1225 WDA 2016, at *11. Accordingly, the ***Butler*** panel held

that 42 Pa.C.S. § 9799.24(e)(3) is unconstitutional. ***Id.*** at *11–12.

In light of ***Butler***, *inter alia*,[6] we are compelled to conclude that the

March 9, 2017 order deeming Appellant an SVP, which effectively amended

---

[6] In its response to Appellant's post-submission letter, the Commonwealth argues, after acknowledging this Court's ruling in ***Butler***, as well as our authority to correct illegal sentences *sua sponte*, that this Court lacks the authority to act to correct Appellant's illegal SVP order. The Commonwealth contends that "this appeal is not from Appellant's SVP designation." Commonwealth's Response to Appellant's Post-Submission Communication, 12/7/17, at 2. As the Commonwealth sees it:

> On November 29, 2016, Appellant was sentenced. Counseled post-sentence motions were filed on December 9, 2016, and the trial court denied them on December 16, 2016. Appellant filed a Notice of Appeal on January 13, 2017, … "from the Judgment of Sentence imposed on November 29, 2016, which became final on December 15, 2016, when the Post-Sentence Motion was denied." The SVP hearing did not occur until March 9, 2017, and the "Amended – Order of Sentence" deeming Appellant a[n] SVP was issued that day. Appellant never amended his present appeal to include the March 9, 2017 Order deeming him a[n] SVP or filed a separate notice of appeal from [that] order.
>
> Time limitations for taking appeals are strictly construed and cannot be extended as a matter of grace. ***Commonwealth v. Valentine***, 928 A.2d 346 (Pa. Super. 2007). Consequently, it is the position of the Commonwealth that Appellant's categorization as a[n] SVP is not ripe for review where he never appealed from the March 9, 2017 Order. It was a separate [and] final order. ***See Commonwealth v. Whanger***, 30 A.3d 1212, 1215 (Pa. Super. 2011), *appeal denied*, 42 A.3d 293 (Pa. 2012) (where defendant chose to have SVP after sentencing hearing, the SVP order was not a modification or rescission of the sentencing order. "The sentencing order was one thing; the SVP order was another."). In ***Butler***, the SVP determination occurred prior to sentencing and was therefore reflected on the sentencing order as part of the sentence such that review of the

*(Footnote Continued Next Page)*

legality of the SVP order was a proper subject matter of the appeal. Whereas, in Appellant's case, Appellant's judgment of sentence was final without regard to the SVP status determination and he properly filed an appeal on January 13, 2017. Appellant had two choices after the "Amended - Order of Sentence" containing the SVP designation was filed on March 9, 2017 - seek to amend his Notice of Appeal or file a new notice of appeal from the March 9th order. He did neither, and, therefore the illegality of the March 9, 2017 SVP Order is not a matter properly before this Court. This Court should find the issue presented in the Supplemental Letter for Appellant waived without prejudice for him to raise it on collateral review.

***Id.***

We disagree with the Commonwealth's assessment in light of **Butler** and **Muniz**. In **Whanger**, the appellant argued that the trial court lacked jurisdiction to modify the original sentencing order with a post-sentence SVP order outside of the 30-day window set forth in 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed."). In rejecting this claim, the **Whanger** Court reasoned:

[Whanger]'s reliance on Section 5505 is misplaced. An SVP determination is a collateral consequence of a conviction and is not a sentence. ***Commonwealth v. Leidig***, 598 Pa. 211, 956 A.2d 399, 404–05 (2008). That being the case, the SVP order could not possibly be a modification or rescission of the sentencing order. The sentencing order was one thing; the SVP order was another. Because the SVP order did not modify the sentence, Section 5505—which limits a court's ability to modify its orders—is not applicable.

**Whanger**, 30 A.3d at 1215 (emphasis added).

It is clear that the **Whanger** Court's rejection of the appellant's Section 5505 claim was explicitly premised on prior rulings that had deemed SVP determinations as non-criminal, collateral consequences of criminal convictions. The **Butler** Court explicitly rejected that notion in light of
*(Footnote Continued Next Page)*

- 18 -

the November 29, 2016, judgment of sentence, is illegal. ***See Butler***, No. 1225 WDA 2016, at *12. Accordingly, we vacate that portion of the sentencing order, and remand Appellant's case for the trial court to

*(Footnote Continued)* _____

***Muniz***. Post-***Butler***, SVP determinations must be conceptualized as part-and-parcel of the underlying criminal sentence. Both are punitive consequences of the same underlying criminal act(s). They constitute an aggregate criminal sentence.

Thus, we are not convinced by the Commonwealth's argument that ***Whanger*** compels this Court to overlook, on jurisdictional grounds, the illegality of the SVP order entered after Appellant filed his notice of appeal. Either the trial court lacked the authority to issue the SVP order because of the time constraints set forth in Section 5505, as ***Whanger*** was effectively overruled by ***Muniz*** and ***Butler*** on that point; or the trial court had the authority to amend the sentencing order, and that amendment was illegal under ***Butler***. Either way, the most prudent course of actions is to vacate the illegal aspects of Appellant's aggregate judgment of sentence, which necessarily includes the order designating him to be an SVP. It would be an incredible waste of judicial resources, as well as a waste of the limited resources of the Allegheny County Offices of the District Attorney and the Public Defender, to kick this proverbial can down the road to collateral review.

Alternatively, this Court could deem premature Appellant's notice of appeal, and deem it to have been filed on March 9, 2017, pursuant to Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). Here, the entire SVP proceeding is null and void in light of ***Butler***. Therefore, the SVP "determination" has not, and is not, being challenged on its merits, even though the entry of the SVP order constitutes the final, appealable order in this case. Thus, in the spirit of Rule 905(a)(5), this Court could deem Appellant's notice of appeal as having been filed on March 9, 2017. Regardless of the theory under which we proceed, and in light of the shifting legal landscape in this area, we are content that our disposition in this case, to vacate the SVP order and remand pursuant to ***Butler***, is the most appropriate course of action.

determine under what tier of SORNA Appellant must register, and to provide him with the appropriate notice of his registration obligations under 42 Pa.C.S. § 9799.23. *See id.* at *13.

Portion of sentencing order deeming Appellant an SVP **vacated**. Judgment of sentence **affirmed** in all other respects. Case **remanded**. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2018