J-S05028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH LEROY WENZLER | |
| Appellant | No. 1153 MDA 2021 |

Appeal from the PCRA Order Entered August 5, 2021
In the Court of Common Pleas of Lebanon County
Criminal Division at No: CP-38-CR-0000554-2017

BEFORE: PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:                **FILED: SEPTEMBER 1, 2022**

Appellant, Joseph Leroy Wenzler, who was sentenced to imprisonment for multiple sexual offenses, appeals from (1) an order dated August 3, 2021 classifying him as a sexually violent predator ("SVP") under revised Subchapter H of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10—9799.42, and (2) an order dated August 5, 2021 denying relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. We reverse the order declaring Appellant an SVP and affirm the order denying PCRA relief.

The court sentenced Appellant on January 17, 2018. The statute that governs Appellant's SVP proceedings, 42 Pa.C.S.A. § 9799.24, requires the court to decide the SVP issue before sentencing, unless the defendant waives a pre-sentence SVP assessment. Here, Appellant did not waive his pre-sentence SVP assessment, but the court did not declare Appellant an SVP until

August 3, 2021, more than three years after sentencing. Because the SVP determination was plainly untimely, we hold that it is a nullity.

We affirm the order denying PCRA relief. Appellant sought PCRA relief on the grounds that trial counsel was ineffective for failing to have Appellant's mental status evaluated for competency. Appellant argues his guilty plea was forced or unknowing due to his lack of competency. The PCRA court properly denied these claims because the evidence presented during the PCRA evidentiary supports its determination that Appellant was competent.

In March 2017, Appellant was charged with multiple counts of involuntary deviate sexual intercourse with a child and indecent assault, along with other charges stemming from incidents that occurred between 2008 and 2015, when the victim was between six and twelve years old. Appellant was represented by an attorney from the Lebanon County Public Defender's Office. On October 17, 2017, Appellant entered an open guilty plea to all charges, and the court ordered the Sexual Offenders Assessment Board ("SOAB") to perform an SVP assessment prior to sentencing.

Shortly before Appellant's guilty plea, two important decisions relating to SORNA were decided. First, in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), our Supreme Court held that SORNA constituted a punitive regulatory scheme that, when imposed retroactively to sex offenders who committed their offenses prior to SORNA's enactment, amounted to an unconstitutional *ex post facto* law. Next, in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) ("**Butler I**"), the Superior Court held that in view

of *Muniz*, the procedure in Section 9799.24(e)(3) for making SVP determinations was unconstitutional.

On December 18, 2017, the Commonwealth filed a motion seeking a continuance of SVP proceedings (but not other sentencing proceedings) pending further appeals in *Muniz* and *Butler I*. The Commonwealth argued that it had appealed *Muniz* to the United States Supreme Court, and if that Court overturned *Muniz*, *Butler I* would also be overturned[1] because it rested on *Muniz*. The Commonwealth promised to file another motion seeking reinstatement of SVP proceedings in the present case within 45 days after resolution of the appeals in *Muniz* and *Butler I*. The next day, without waiting for Appellant to respond, the court entered an order granting the Commonwealth's motion to continue SVP proceedings. The order stated that if *Muniz* or *Butler I* permitted the Commonwealth to seek SVP classification, the Commonwealth could "petition the Court to reschedule a petition in this matter . . . within 45 days of the above cases being resolved by the appellate courts."

On January 19, 2018, the court sentenced Appellant to an aggregate of 22–47 years' imprisonment. The court advised Appellant that he was a Tier III (lifetime) registrant under SORNA, but Appellant refused to sign the form concerning his duty to register as a sex offender for life. The court did not

---

[1] Although the Commonwealth did not explicitly state that it had appealed *Butler I* to our Supreme Court, this point was implicit from the request for relief in its motion.

conduct an SVP proceeding; nor did any party mention any SVP issue. On January 29, 2018, Appellant filed timely post-sentence motions challenging the decision to impose consecutive sentences for several counts of conviction. On May 29, 2018, the court denied Appellant's post-sentence motions, and on June 28, 2018, Appellant filed a direct appeal. On February 11, 2019, this Court affirmed Appellant's judgment of sentence in a memorandum decision. On August 27, 2019, our Supreme Court denied Appellant's petition for allowance of appeal.

On March 26, 2020, our Supreme Court reversed **Butler I** by holding that the lifetime registration, notification, and counseling requirements applicable to SVP's do not constitute criminal punishment and therefore were not unconstitutional. **Commonwealth v. Butler**, 226 A.3d 972, 976 (Pa. 2020) ("**Butler II**").

On September 14, 2020, Appellant filed a timely PCRA petition alleging that guilty plea counsel was ineffective for permitting him to plead guilty without having his competency to stand trial evaluated, thus rendering his guilty plea unknowing, involuntary, and unintelligent.

On December 8, 2020, the Commonwealth filed a motion requesting a hearing to determine whether Appellant is an SVP. On February 16, 2021, Appellant filed an answer stating that the Commonwealth had the duty to seek SVP status prior to sentencing, and its failure to do so (or to memorialize its intention at sentencing to seek SVP status subsequent to sentencing) barred it from doing so now.

On March 30, 2021, the court held an evidentiary hearing on both the SVP and PCRA issues. On August 3, 2021, the court entered an order finding Appellant an SVP. On August 5, 2021, the court entered an opinion and order denying PCRA relief. On August 24, 2021, Appellant appealed the SVP and PCRA orders to this Court.

On August 27, 2021, Appellant filed a Pa.R.A.P. 1925 concise statement of matters complained of on appeal. With regard to the SVP issue, Appellant stated in boilerplate fashion, "The Sentencing Court erred by granting the Commonwealth's request to have [Appellant] designated a[n] [SVP]." The lower court docket reflects that the court sent the certified record to this Court without preparing a Rule 1925 opinion on the SVP issue.

In his appellate brief, Appellant contends that his SVP determination was a nullity due to the court's failure to make it prior to sentencing and as unsupported by clear and convincing evidence. Appellant also argues that trial counsel was ineffective for failing to have Appellant's competency evaluated before permitting him to plead guilty.

We first address the court's failure to make an SVP determination prior to sentencing. Subchapter H of SORNA[2] defines the term "sexual offender"

---

[2] SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I was enacted in 1995 but was held unconstitutional by our Supreme Court in **Commonwealth v. Williams**, 733 A.2d 593 (Pa. 1999). In response, the General Assembly enacted Megan's Law II in 2000. In 2003, the Supreme Court held that some portions of Megan's Law II were unconstitutional, **Commonwealth v. Gomer Williams**, *(Footnote Continued Next Page)*

as, *inter alia*, any individual who has committed a "sexually violent offense."

42 Pa.C.S.A. § 9799.12. The term "sexually violent offense" includes offenses

listed under section 9799.14 of SORNA for which the individual was convicted.

*Id.* An "SVP" belongs to a special subset of sexual offender, that is, an

---

832 A.2d 962 (Pa. 2003). The General Assembly responded by enacting Megan's Law III. In 2006, the United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901—16945. In 2011, the General Assembly passed SORNA. SORNA went into effect on December 20, 2012, and Megan's Law II expired on the same date. In 2013, our Supreme Court struck down Megan's Law III for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. *Commonwealth v. Neiman*, 84 A.3d 603, 616 (Pa. 2013). By that time, however, SORNA had already replaced Megan's Law III.

SORNA's purpose is to "substantially comply with [federal law] and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders and community notification about sexual offenders." 42 Pa.C.S.A. § 9799.11.

SORNA has been amended several times, most importantly in Acts 10 and 29 of 2018. Through Act 10, as amended in Act 29, the General Assembly split SORNA I's former Subchapter H into a revised Subchapter H and Subchapter I. Subchapter I applies to sexual offenders who committed an offense on or after April 22, 1996 but before December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.51—9799.75. Revised Subchapter H applies to offenders who committed an offense on or after December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.10—9799.42.

Here, Appellant's offenses took place both before and after December 20, 2012, thus straddling the boundary between revised Subchapter H and Subchapter I. We will apply revised Subchapter H to this case. We need not analyze at length which subchapter applies, because (1) both parties analyze revised Subchapter H in their briefs, thus implicitly agreeing that revised Subchapter H applies, and (2) the critical text for our purposes in revised Subchapter H, 42 Pa.C.S.A. § 9799.24(a) and (e)(3), is identical to the text in the counterpart statute in Subchapter I, 42 Pa.C.S.A. § 9799.58.

individual convicted of a sexually violent offense "who is determined to be a[n] [SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." **Id.** SVP's must comply with the applicable provisions of SORNA for the rest of their lives. 42 Pa.C.S.A. § 9799.15. Sexual offenders and SVP's differ in that, for example, (1) SVP's are subject to the quarterly verification requirement (i.e., verification of residence with the Pennsylvania State Police), whereas most offenders not classified as SVP's are subject to annual or semiannual verification, 42 Pa.C.S.A. § 9799.25; (2) victim notification differs depending upon whether the convicted individual is classified as an offender or SVP, 42 Pa.C.S.A. § 9799.26; and (3) SVP's are subject to certain counseling requirements, 42 Pa.C.S.A. § 9799.36. SVP requirements are not criminal punishment, **Butler II**, 226 A.3d at 976, but are instead "non-punitive collateral consequence[s] of the criminal sentence." **Commonwealth v. Schrader**, 141 A.3d 558, 561 (Pa. Super. 2016).

SORNA's statute governing SVP proceedings, 42 Pa.C.S.A. § 9799.24, provides in relevant part that "after conviction but before sentencing," the court "shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a). Following the SOAB's assessment, "a hearing to determine whether the individual is a[n] [SVP] shall be scheduled upon the praecipe filed by the district attorney." 42 Pa.C.S.A. § 9799.24(e)(1). "At the hearing prior to sentencing, the court shall determine

whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n] [SVP]." 42 Pa.C.S.A. § 9799.24(e)(3) (emphasis added).[3] The reason for entering the SVP determination before sentencing is because it can play an important role in the defendant's sentence. *Schrader*, 141 A.3d at 562. A finding that the defendant is an SVP can constitute an aggravating factor at sentencing; a finding that he is not an SVP may cause a sentencing reduction. *Id.* Because of this potential impact, we have described the imposition of SVP status as "a component of the judgment of sentence even though the ultimate collateral consequences are non-punitive." *Id.*

Several decisions provide guidance as to when SVP hearings must occur in relation to sentencing. *See Commonwealth v. Baird*, 856 A.2d 114 (Pa. Super. 2004) (construing Megan's Law II); *Commonwealth v. Whanger*, 30 A.3d 1212 (Pa. Super. 2011) (construing Megan's Law II); *Schrader*, *supra* (construing SORNA). In *Baird*, the court immediately imposed a sentence of probation after accepting the defendant's guilty plea to possession of child pornography. The court overruled the Commonwealth's objection that sentencing could not take place until the SOAB completed the defendant's SVP assessment. The Commonwealth appealed to this Court. We vacated the defendant's sentence and remanded for resentencing, holding that "the

_____

[3] Furthermore, "[a] copy of the order containing the determination of the court shall be immediately submitted to the individual, the district attorney, the Pennsylvania Parole Board, the Department of Corrections, the [B]oard and the Pennsylvania State Police." 42 Pa.C.S.A. § 9799.24(e)(4).

procedure of reaching a determination of whether one is an offender or an SVP, as outlined in Megan's Law, must necessarily precede sentencing . . . Only when the offender's status under Megan's Law is determined, can the court proceed with sentencing." *Id.*, 856 A.2d at 118.

In **Whanger**, the defendant pled guilty to sex offenses. Before sentencing, he signed a form in which he acknowledged that he understood his SVP assessment must take place before sentencing, but that he waived this requirement. The court proceeded to sentencing, and nine months later, it determined at a separate hearing that the defendant was an SVP. Citing **Baird**, the defendant argued that his SVP determination must be vacated because it did not take place before sentencing. We held, however, that the SVP determination could take place after sentencing because the defendant waived his statutory right to a pre-sentencing SVP assessment. **Whanger**, 30 A.3d at 1214. We reasoned **Baird** was distinguishable because

> [**Baird's**] holding was merely a statement of what the statute requires. The holding had nothing whatsoever to do with waiver because waiver was not an issue in **Baird**. Moreover, the appellant in that case (the Commonwealth) did preserve its claim by objecting at sentencing to the trial court's decision to sentence the defendant before the SVP assessment and determination . . . In the present case, Appellant made no such objection.

**Id.**[4]

_____

[4] It deserves mention that **Baird** and **Whanger** construed a statute in Megan's Law II, 42 Pa.C.S.A. § 9795.4, that expired in 2012 but was identical in all material respects to the statute under review today, Section 9799.24 in
*(Footnote Continued Next Page)*

In **Schrader**, the defendant waived his right to a pre-sentencing SVP assessment. The court imposed a sentence of imprisonment on April 29, 2015 and later determined that the defendant was an SVP on August 11, 2015. On September 8, 2015, the defendant appealed both his sentence and the SVP order to this Court. We observed that the appeal presented the question of whether the defendant "who has other issues unrelated to his SVP status should await his post-sentence SVP hearing before filing his direct appeal." **Id.**, 141 A.3d at 561. We held that the appeal was timely as to both the sentence and the SVP order, because "where a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is rendered." **Id.**

For our present purposes, we distill these decisions into a single point: under 42 Pa.C.S.A. § 9799.24, the SVP determination is a "component of sentence" that must take place before imposition of the punitive elements of the sentence (such as the term of imprisonment or probation) unless the defendant waives his right to a pre-sentencing SVP assessment.

---

SORNA. In our view, **Baird** and **Whanger** continue to remain good law under SORNA. Our Supreme Court has held that "[w]here the legislature, in a later statute, uses the same language as used in a prior statute which has been construed by the courts, there is a presumption that the language thus repeated is to be interpreted in the same manner such language had been previously interpreted when the court passed on the earlier statute." **Com. v. Sitkin's Junk Co.**, 194 A.2d 199, 202 (Pa. 1963). We see nothing that overcomes this presumption with regard to the text of Megan's Law II that reappears in Section 9799.24.

It is clear the court's SVP determination plainly was untimely. Instead of making its SVP determination prior to sentencing on January 17, 2018, the court entered its SVP determination on August 3, 2021, more than three years after sentencing. **Whanger** and **Schrader** do not salvage this error, as Appellant did not waive his right to a pre-sentence SVP determination. Nor does **Baird** offer any relief, since the Commonwealth did not object to the lack of a SVP determination prior to sentencing. Further, the trial court was without jurisdiction to modify its sentencing order to include a SVP determination, since its authority to modify an order only extends 30 days after an order is entered if no appeal is filed. 42 Pa.C.S.A. § 5505.

The Commonwealth's strategy to preserve the SVP issue ran afoul of positive law. To preserve its right to insist upon a SVP determination while **Muniz** and **Butler I** were being resolved on appeal, the Commonwealth should have insisted upon having an SVP determination prior to sentencing that no doubt would have been denied by the court due to the status of **Muniz** and **Butler I** at that time. The Commonwealth then could have appealed the sentence to preserve the SVP issue pending resolution of **Muniz** and **Butler I.** Properly preserving the issue for appeal as opposed to bifurcating sentencing from the SVP proceedings would not have been form over substance. The former achieves sentencing finality, issue preservation, and compliance with statutory direction; the latter defeats issue preservation and violates the statutory prescription regarding sentencing. The Commonwealth

- 11 -

failed to properly preserve the SVP issue, and the trial court erred by attempting to impose an SVP determination more than three years after sentencing. It appears that the court attempted to honor the Commonwealth's request for a continuance of the SVP determination while allowing the remainder of sentencing to move forward. This motive, however, did not justify the issuance of an order after statutory time limits had passed. The order was a legal nullity. **See Commonwealth v. Green**, 265 A.3d 798 (Pa. Super. 2021), *allocatur granted*, —A.3d—, 2022 WL 1014261 (Pa., Apr. 5, 2022) (order granting juvenile murder defendant's petition for decertification and transfer to juvenile court was legally null under 42 Pa.C.S.A. § 6322(b) and Pa.R.Crim.P. 597(D), which require trial court to rule on such petitions within twenty days after decertification hearing); **Commonwealth v. Martinez**, 141 A.3d 485, 490-91 (Pa. Super. 2016) (where post-sentence motions were denied by operation of law due to expiration of 120-day time limit for deciding such motions, order issued by trial court after expiration of 120-day time limit was legal nullity due to lack of jurisdiction). Accordingly, we are constrained to reverse the court's SVP order.[5]

---

[5] Because we reverse on this basis, it is unnecessary for us to address Appellant's challenge to the sufficiency of the evidence underlying the court's SVP determination.

In his next argument, Appellant argues that trial counsel was ineffective for failing to have Appellant's competency evaluated before permitting him to plead guilty. We disagree.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." ***Commonwealth v. Washington***, 269 A.3d 1255, 1262 (Pa. Super. 2022), (*en banc*). This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. ***Id.*** We review the court's legal conclusions de novo. ***Id.***

"Counsel is presumed to have rendered effective assistance." ***Id.*** at 1263. To establish a claim of ineffective assistance of counsel,

> a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Id.***

After a thorough review of the record, the briefs, the applicable law, and the well-reasoned decision of the Honorable Charles Jones dated August 3,

2021 ("Decision"),[6] we conclude Appellant's issue merits no relief. We agree with Judge Jones that the evidence adduced during the PCRA evidentiary hearing demonstrates that Appellant understood the nature of the charges against him and participated rationally in his defense. Decision at 3-6, 9. Accordingly, we affirm the order denying PCRA relief.

Order classifying Appellant as SVP reversed. Order denying PCRA relief affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/01/2022

---

[6] We append Judge Jones' decision to this memorandum.